

25 CV 1414

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

**ANTHONY MARRA**,

    Plaintiff,

v.

**COUNTY OF ERIE; ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES;
CHILD PROTECTIVE SERVICES;
BRIANNA FISHER; KRISTEN MOSS; SUE GORLEWSKI;
SAVOY BLACKLEY; DANIELLE YACONO;
JESSICA FRANCIS;
CATHOLIC CHARITIES OF BUFFALO d/b/a THERAPEUTIC SUPERVISED
VISITATION;
SHERENE (last name unknown), TSV supervisor;
JESSICA (last name unknown), TSV employee;
MAKAYLA URBANCZYK; KEVIN URBANCZYK JR.; COLLEEN URBANCZYK;
RYAN BLENDOWSKI;**

**JOHN AND JANE DOES 1–20**,

    Defendants.

-------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

**I. PRELIMINARY STATEMENT**

1. This is an action for damages, declaratory relief, and injunctive relief under 42 U.S.C. § 1983 and New York law.

2. This action arises from a sustained course of retaliation, fabrication of evidence, suppression of exculpatory material, selective enforcement, and deliberate indifference carried out under color of state law by Erie County DSS/CPS, their employees and supervisors, and their contracted visitation provider, Therapeutic Supervised Visitation ("TSV"), operated by Catholic Charities of Buffalo.

3. Plaintiff **Anthony Marra** is the biological father of **Mila Marra** (DOB July 18, 2020) ("Mila" or "the Child").

4. Plaintiff brings this action solely on his own behalf to vindicate violations of his constitutional rights, including his fundamental liberty interest in the care, custody, companionship, and upbringing of his child.

5. Plaintiff pleads and describes the injuries suffered by his daughter, Mila Marra, not as a separate plaintiff, but as an essential component of the constitutional and familial harms inflicted upon Plaintiff by Defendants' conduct, including the destruction of the parent-child relationship, the infliction of emotional distress upon the child, and the foreseeable trauma caused by prolonged, arbitrary separation and retaliatory interference with visitation.

6. Plaintiff brings this action to redress the unlawful deprivation of his First Amendment rights, his and his daughter's Fourteenth Amendment rights to familial association and due process, and the creation of a state-created danger by Defendants' deliberate decision to ignore and conceal safety concerns in the custodial household while targeting Plaintiff, the protective parent.

7. Plaintiff does not purport to bring claims on behalf of the minor child absent appointment of a guardian ad litem, and pleads the child's injuries solely as elements of Plaintiff's constitutional harm and damages.

8. Defendants engaged in, inter alia:
   a. fabrication of evidence and issuance of contradictory indicated reports;
   b. suppression and minimization of exculpatory evidence, including a Child Advocacy Center ("CAC") recantation;
   c. retaliation for Plaintiff's protected speech, including peaceful protest and formal notice of rights;
   d. arbitrary and retaliatory interference with visitation, including a 49-day blackout of contact;
   e. cancellation of a scheduled visit on December 4, 2025 because Plaintiff sought to exercise "First Amendment rights" and consult counsel;
   f. knowing failure to protect the Child from danger in the custodial home, including concealment and non-enforcement of a stay-away violation personally observed by a DSS-affiliated worker;
   g. misrepresentation of court orders and authority to the New York Supreme Court and to TSV, resulting in denial of holiday access expressly authorized by the presiding judge; and
   h. defamation and stigmatization, portraying Plaintiff as a sexual danger despite internal admissions and police conclusions that allegations were not credible and not true.

9. These actions were not isolated mistakes. They reflect customs, practices, and failures of training and supervision by Erie County and DSS/CPS, and were ratified by supervisory personnel, exposing the County to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

10. Plaintiff seeks to vindicate his rights and his daughter's rights, obtain full compensation for the harms inflicted, and secure structural relief to prevent further retaliation and constitutional violations.

## I-A. SUMMARY OF CLAIMS

11. This action arises from a coordinated pattern of retaliation, fabrication of evidence, suppression of exculpatory information, and deliberate indifference to child safety by Erie County DSS/CPS and their agents, resulting in the prolonged and arbitrary separation of Plaintiff Anthony Marra from his daughter, Mila Marra.

    The core claims are summarized as follows:

    • First Amendment Retaliation - Defendants punished Plaintiff for protected speech, protest, legal advocacy, and invocation of constitutional rights by escalating proceedings, imposing arbitrary visitation restrictions, and canceling visits.

    • Fourteenth Amendment Substantive Due Process - Defendants interfered with the fundamental right to familial association through conscience-shocking conduct unrelated to child safety.

    • Fourteenth Amendment Procedural Due Process - Defendants fabricated evidence, issued contradictory indicated reports, and suppressed exculpatory information that directly affected judicial decisions.

    • State-Created Danger - Defendants knowingly increased the risk of harm to Mila by ignoring disclosures and stay-away violations in the custodial household while targeting the protective parent.

    • Equal Protection / Selective Enforcement - Defendants enforced safety rules against Plaintiff while tolerating or concealing violations by Mother and her partner.

    • § 1983 Conspiracy - Defendants acted in concert to maintain false narratives, suppress evidence, and retaliate against Plaintiff.

    • Monell Liability - These violations were caused by County policies, customs, ratification by supervisors, and failure to train and supervise.

    • State-Law Tort Claims - Defendants committed defamation, intentional and negligent infliction of emotional distress, abuse of process, and related torts.

12. This summary is provided for clarity only; the full factual allegations and causes of action follow.

## II. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this action is brought under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

14. The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

15. Venue is proper in the Western District of New York under 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims occurred in Erie County, New York, and Defendants reside in or conduct business in this District.

## III. PARTIES

### Plaintiff

16. Plaintiff Anthony Marra is an adult resident of Erie County, New York.
17. Plaintiff is Mila's biological father and maintained a loving, consistent relationship with his child prior to Defendants' escalation of restrictions.
18. Plaintiff repeatedly sought medical care when his child reported pain and concerning disclosures, complied with directives, and followed court orders.

### Municipal and Agency Defendants

19. Defendant **County of Erie** is a municipal corporation organized under New York law and is responsible for policies, customs, practices, training, supervision, and discipline of Erie County DSS/CPS.
20. Defendant **Erie County Department of Social Services ("DSS")** is the County agency charged with administering child protective investigations and services.
21. Defendant **Child Protective Services ("CPS")** is a division of DSS responsible for investigating allegations of child abuse and neglect, initiating Article 10 proceedings, and recommending visitation and reunification plans.
22. DSS and CPS acted under color of state law at all relevant times.

### Individual DSS/CPS Defendants

23. Defendant **Brianna Fisher** ("Fisher") was, at all relevant times, a DSS/CPS employee assigned to Plaintiff's case, responsible for investigation, reporting, communications, and coordination with TSV and county counsel.
24. Defendant **Kristen Moss** ("Moss") was, at all relevant times, a DSS/CPS supervisor who reviewed, approved, and/or ratified actions taken in Plaintiff's case.
25. Defendant **Sue Gorlewski** ("Gorlewski") was, at all relevant times, a DSS supervisor/manager with oversight responsibility over CPS operations, including Plaintiff's case.
26. Defendant **Savoy Blackley** ("Blackley") was, at all relevant times, a DSS/CPS caseworker involved in investigative decisions, directing medical visits, and making or supporting indicated findings concerning Plaintiff.
27. Defendant **Danielle Yacono** ("Yacono") was, at all relevant times, a DSS/CPS employee/investigator involved in the pursuit of neglect proceedings and related actions impacting Plaintiff's parental rights.
28. Defendant **Jessica Francis** ("Francis") was, at all relevant times, a DSS-affiliated worker who conducted home visits with CPS caseworkers, including Fisher, and observed facts relevant to the child's safety and a stay-away order.

29. At all relevant times, the individual DSS/CPS Defendants acted under color of state law and within the scope of their employment, while also committing acts outside any objectively reasonable scope of lawful authority.

**TSV / Contracted Provider Defendants**

30. Defendant **Catholic Charities of Buffalo** ("Catholic Charities") is a private entity contracting with Erie County to operate **Therapeutic Supervised Visitation ("TSV")**.

31. TSV, by carrying out supervised visitation pursuant to court orders in coordination with DSS/CPS and functioning as gatekeeper over visitation conditions and cancellations, performs a public function and acts under color of state law for purposes of § 1983.

32. Defendant **Sherene (last name unknown)** was a TSV supervisor/agent who supervised Plaintiff's visits, enforced new conditions, threatened cancellations, and exercised de facto authority to terminate visits.

33. Defendant **Jessica (last name unknown)** was a TSV employee/agent who participated in supervision and in the December 4, 2025, events.

34. At all relevant times, TSV and its employees exercised authority traditionally and exclusively reserved to the State, including controlling access to a parent-child relationship, imposing conditions on visitation, enforcing restrictions, and canceling court-ordered visits. TSV acted jointly with DSS/CPS, pursuant to County contract, under County direction, and as an integral component of the child-protective system. Accordingly, TSV and its agents were willful participants in joint action with the State and acted under color of state law for purposes of 42 U.S.C. § 1983.

**Private Defendants**

35. Defendant **Makayla Urbanczyk** ("Urbanczyk") is Mila's mother.

36. Defendant **Ryan Blendowski** ("Blendowski") is Urbanczyk's partner and was the subject of a stay-away order intended to protect Mila.

37. Plaintiff alleges that Urbanczyk and Blendowski acted jointly and in concert with state actors in conduct that foreseeably caused deprivation of rights and harm to the child, as pleaded below.

**Doe Defendants**

38. John and Jane Does 1-20 are currently unidentified County, DSS, CPS, CAC, TSV employees, supervisors, and/or contractors who participated in, directed, or approved the constitutional violations alleged herein.

39. Plaintiff will seek leave to amend to name Doe Defendants once identities are learned through discovery.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Relationship with Mila and DSS's Early Involvement

40. Prior to DSS intervention, Plaintiff maintained consistent parenting time with Mila and provided stable care.

41. No court had adjudicated Plaintiff unfit prior to the escalation described herein.

42. Plaintiff sought medical evaluation when Mila reported pain or made concerning disclosures.

43. Medical professionals documented child statements and concerns and communicated concerns to CPS/DSS.

44. Rather than neutrally investigate concerns in the custodial household, DSS increasingly scrutinized Plaintiff, the parent seeking help.

**B. Pattern of False Reporting and Police Corroboration (2023)**

45. On **June 6, 2023**, law enforcement responded to accusations made by Urbanczyk against Plaintiff.

46. Police found no basis for charges or action against Plaintiff.

47. On **August 23, 2023**, law enforcement again responded to similar accusations.

48. Police again found no basis for charges or action against Plaintiff.

49. On **October 13, 2023**, law enforcement responded a third time.

50. Body-camera footage documented repeated allegations of harassment and stalking.

51. Officers found no basis for action against Plaintiff and did not charge him.

**C. October 16, 2023, Police-Observed Threats, Court-Issued Orders of Protection, Address Confidentiality, and Subsequent Stalking**

52. On October 16, 2023, during a child exchange, Makayla Urbanczyk's father, Kevin Urbanczyk, threatened Plaintiff in the presence of the minor child.

53. Cheektowaga Police officers responded to the incident and personally observed Kevin Urbanczyk's threatening behavior. Based on what they witnessed, officers explicitly instructed Plaintiff to go immediately to Family Court and seek Orders of Protection for himself and the minor child.

54. Plaintiff complied with law enforcement's directive that same day and obtained Orders of Protection protecting both Plaintiff and the minor child from Kevin Urbanczyk.

55. Body-worn camera footage from Cheektowaga Police documents the officers' observations, their directive to Plaintiff to seek court protection, and the circumstances surrounding the threat. This footage was later provided to the Attorney for the Child, Douglas Stiller.

56. When the parties appeared in Family Court following the incident, the court issued address confidentiality protections for both Plaintiff and the minor child due to Kevin Urbanczyk's behavior and the safety concerns presented.

57. Despite the existence of these Orders of Protection, documented police observations, and court-ordered address confidentiality, Defendants failed to treat Kevin Urbanczyk as a safety risk in subsequent proceedings.

58. In or about July 2024, while Plaintiff had physical custody of the minor child, Makayla Urbanczyk and Kevin Urbanczyk appeared outside Plaintiff's confidential residence, parked outside for over thirty minutes, and engaged in stalking behavior.

59. East Aurora Police reports confirm this July 2024 stalking incident and Plaintiff's report that Makayla Urbanczyk and Kevin Urbanczyk had located his confidential address.

60. Defendants were aware based on prior court appearances; of the Orders of Protection, the address confidentiality determination, and the July 2024 police reports documenting stalking behavior, yet failed to initiate protective action, failed to enforce the Orders of Protection, and failed to reassess the safety of the custodial environment.

61. The deliberate disregard of police-observed threats, court-issued Orders of Protection, and subsequent stalking reports demonstrates selective enforcement and deliberate indifference to known risks to the minor child and Plaintiff.

## D. MATERIAL MISREPRESENTATIONS BY THE ATTORNEY FOR THE CHILD

62. Plaintiff previously provided the Attorney for the Child, Douglas Stiller, with audio and video evidence documenting that the minor child was present during the October 16, 2023, threatening incident involving Kevin Urbanczyk.

63. This video evidence was later introduced into evidence during trial proceedings, confirming that the child was present at the exchange.

64. Despite possessing this evidence, Mr. Stiller filed papers on or about February 7, 2024, seeking dismissal of the Orders of Protection protecting Plaintiff and the minor child from Kevin Urbanczyk, asserting that the child was not present during the October 16, 2023, incident.

65. This assertion directly contradicted evidence known to him at the time.

66. The dismissal of the Orders of Protection occurred within days of the minor child's first disclosures of abuse.

67. Defendants DSS and CPS were aware of the October 16, 2023, incident, the child's presence, and the existence of the Orders of Protection, yet failed to correct the record, disclose the contradiction, or take protective action.

68. The failure to correct known misrepresentations materially affected the child's protection and contributed to continued exposure to harm.

69. The 2023 incidents documented a pattern of unsubstantiated reporting and escalation attempts.

## E. DSS Directs 2024 Medical Visits, Then Re-labels Them "Unnecessary"

70. Throughout **2024**, CPS personnel, including Blackley, directed Plaintiff to take Mila to pediatric urgent care and medical evaluations as part of agency involvement.

71. Plaintiff complied in good faith to protect his child and to comply with CPS expectations.

72. Plaintiff's compliance created medical documentation reflecting concerns and disclosures requiring careful investigation.

73. DSS later labeled the DSS-directed medical visits "unnecessary."

74. DSS relied on that mischaracterization to support neglect allegations against Plaintiff.

75. The "unnecessary" narrative was contrary to DSS's own directives and functioned as a manufactured basis to stigmatize Plaintiff as a danger.

## F. JULY 9, 2024, CHILDREN'S HOSPITAL DISCLOSURE

**July 9, 2024, Children's Hospital Disclosure, Retaliatory Allegation, and Suppression of Exculpatory Evidence**

76. On July 9, 2024, Plaintiff and his stepmom Christina Henderson; brought the minor child to Oishei Children's Hospital due to a serious foot laceration, vaginal redness, and pain, consistent with prior medical concerns documented throughout 2024.

77. While at the hospital, and in the presence of Plaintiff and Christina Henderson, the minor child made a spontaneous disclosure to CPS caseworker Jasmine that she had been hit in the face and on the buttocks by both her mother, Makayla Urbanczyk, and her maternal grandmother, Colleen Urbanczyk. Mila made further disclosures about her mother's conduct when she got injured; upon Jasmine asking what happened.

78. This disclosure was made in a medical setting, in the presence of mandated reporters, and in the context of the child receiving treatment for physical injuries and genital discomfort.

79. Rather than triggering a neutral safety investigation into the custodial household, the disclosure was disregarded, minimized, and never meaningfully investigated by Defendants.

80. During this hospital visit, Makayla Urbanczyk became hostile toward Plaintiff in written communications, including telling Plaintiff that he "needed a psychiatrist," as documented in the parties' co-parenting communication platform.

81. Within one hour of this exchange, Makayla Urbanczyk and Colleen Urbanczyk contacted law enforcement and made a sexual abuse allegation against Plaintiff.

82. East Aurora Police Officer Foster later stated, on recorded body-camera footage, that both he and CPS caseworker Savoy Blackley found it "weird" and concerning that Makayla Urbanczyk and Colleen Urbanczyk waited approximately two days to report the allegation, noting that if such an allegation were genuine, law enforcement would typically be contacted immediately.

83. The timing, sequence, and surrounding circumstances demonstrate that the sexual allegation against Plaintiff was retaliatory in nature and arose only after the July 9, 2024, medical disclosure implicating the custodial household.

84. Defendants failed to preserve, disclose, or fairly weigh the July 9, 2024, hospital disclosure when later pursuing restrictive actions against Plaintiff, suppressing material exculpatory evidence and contributing to the continued misdirection of child-protective scrutiny away from the custodial household.

**G. February 2025 – CAC Interview, Exculpatory Recantation, and Ambush Timing**

85. On or about **February 13, 2025**, Mila was brought for a forensic interview at the Child Advocacy Center ("CAC").

86. During the CAC interview, Mila made an exculpatory statement substantially to the effect of: "I'm just kidding, that didn't happen. My dad just loves me."

87. That statement undermined any narrative that Plaintiff abused his child and supported the presence of coaching and contamination.

88. DSS/CPS failed to fairly disclose, highlight, or preserve the recantation's meaning in its submissions and actions.

89. On or about **February 14, 2025**, Yacono contacted Plaintiff shortly before a court appearance and gave him only minutes to appear, effectively denying meaningful opportunity to consult counsel or prepare.

90. The timing and manner of Defendants' actions deprived Plaintiff of basic procedural fairness.

## H. March 2025 - False Sexual Allegation, Police Debunking, Savoy Admissions, Contradictory Indicated Reports

91. On or about **March 7, 2025,** CPS logged a sexual misconduct allegation against Plaintiff.

92. On or about **March 10, 2025,** East Aurora Police assessed the allegation and found it lacked credibility.

93. Police documentation reflected the absence of credible evidence supporting the allegation.

94. On or about **March 24, 2025,** Blackley met with Plaintiff and stated the allegation was "not true" and "not credible."

95. Blackley also admitted she directed the 2024 medical visits.

96. Blackley expressed surprise about being assigned to the case, evidencing internal irregularity.

97. Despite police conclusions and internal admissions, DSS issued an indicated report on or about **March 26, 2025**.

98. DSS issued a second indicated report on or about **March 28, 2025,** with materially different dates and narrative.

99. The two indicated reports were internally inconsistent and irreconcilable.

100. The inconsistent reports reflect manipulation or fabrication rather than neutral child protection.

101. DSS's maintenance of indicated findings despite admissions of non-credibility inflicted stigma and constrained Plaintiff's parental rights.

## I. DSS Ignores Mandated Reporter Disclosures Concerning the Custodial Household

102. Medical professionals documented child statements and concerns consistent with abuse and/or grooming risk in the custodial household.

103. Records and expert testimony included concerns implicating Blendowski, not Plaintiff.

104. DSS/CPS had access to those disclosures and records.

105. DSS/CPS failed to open or pursue a serious, neutral safety investigation directed at the custodial household; despite concerns stated by medical professionals directly to CPS caseworker Savoy Blackley.

106. Instead, DSS/CPS escalated scrutiny against Plaintiff, the parent seeking evaluation and safety.

107. This selective focus increased risk to the child while depriving Plaintiff of family integrity.

## J. May 6-7, 2025 - Protected Protest; Police Body-Cam; DSS Misconduct On-Scene

108. On **May 6 and May 7, 2025,** Plaintiff engaged in peaceful protest on a public sidewalk near DSS offices, criticizing DSS handling of the case.

109. Police responded. Body-worn camera footage shows officers repeatedly telling DSS staff that Plaintiff was not breaking any law and was allowed to protest.

110. Officers told Plaintiff words to the effect of: "You did nothing wrong."

111. Officers criticized DSS behavior and confirmed Plaintiff's conduct was lawful.

112. During these encounters, DSS employees, including Blackley and Yacono, made derogatory and defamatory statements about Plaintiff, including calling him a "sociopath", a "piece of shit", "he's gone rogue", and implying sexual danger without evidentiary basis.

113. These statements regarding the case, made in a public setting; were intended to discredit Plaintiff's protected speech and justify retaliation.

114. The police footage provides objective corroboration of protected activity and DSS animus.

## K. May 12, 2025 - Retaliatory Escalation; 49-Day Blackout of Contact

115. On or about **May 12, 2025**, approximately 72 hours after the protest and body-cam encounters, DSS escalated proceedings by filing an amended petition and/or advancing new restrictive actions. Their claim was that the plaintiff was "mentally unstable and ill" due to the activities on May 6 & 7, 2025.

116. The timing demonstrates retaliatory motive.

117. After the May 12 escalation, Plaintiff's contact with Mila was blocked for approximately **49 days**.

118. The blackout was not tied to a contemporaneous adjudication of imminent danger based on new evidence.

119. The blackout functioned as punishment and leverage, not child protection.

120. Plaintiff was pressured into compliance measures and restrictions unrelated to objective child safety.

121. When visits resumed, Mila exhibited distress consistent with separation harm and stated, "I don't want to go home with my mom, I want to go home with you!" upon the end of the first visit after 49 days.

## L. July 2025 - Written Notice of Coaching, Injuries, Discomfort, and Emotional Harm Ignored

122. On or about **July 2, 2025**, Plaintiff provided written notice to Fisher/Moss documenting concerns including coached statements, injuries arising in the custodial household, and child discomfort.

123. Plaintiff documented evidence of retaliation against medical professionals who documented disclosures.

124. DSS/CPS did not meaningfully investigate the new injuries and disclosures in the custodial household.

125. DSS/CPS did not implement a documented safety plan responsive to the custodial risks raised.

126. On or about **July 18, 2025**, Plaintiff sought clarity about when Blendowski resumed contact with the child despite a stay-away context.

127. Urbanczyk refused to provide a clear timeline.

128.    DSS/CPS failed to enforce transparency and failed to neutralize the risks raised.

## M. August 19, 2025 - Evidence Email and Agency Non-Action

129.    On **August 19, 2025,** Plaintiff sent a detailed email to DSS leadership attaching evidence of coaching, stay-away concerns, and risks in the custodial household.

130.    The email placed supervisors on actual notice.

131.    DSS/CPS did not take protective action commensurate with the risks described.

132.    The non-action evidences deliberate indifference and a custom of selective enforcement.

## N. September 12, 2025 - AFC Acknowledges DSS/Mother Caused Denied Visitation

133.    On or about **September 12, 2025,** the Attorney for the Child (Douglas Stiller) acknowledged that DSS and Urbanczyk; rather than Plaintiff, were causing denied visitation.

134.    This admission corroborates that Plaintiff was not the source of disruption and that DSS actions were driving separation.

## O. October 16-17, 2025 - Formal Notice of Rights; Immediate Retaliatory "No Items" Rule

135.    On **October 16, 2025,** Plaintiff served a formal Notice of Rights and violations to DSS and TSV, asserting constitutional protections and documenting misconduct.

136.    Within hours, upon Plaintiff's arrival for a supervised visit, TSV, attributed to DSS direction; imposed a new "no items" rule prohibiting ordinary child items other than food.

137.    TSV staff stated or implied Plaintiff was responsible for the rule, despite Plaintiff's express objection.

138.    Plaintiff requested to consult counsel before agreeing to new conditions.

139.    TSV threatened cancellation if Plaintiff contacted counsel, chilling protected activity and access to legal consultation.

140.    The timing and threats demonstrate retaliation rather than child safety.

## P. October 27, 2025 - Court Appearance; Holiday Access and Step-Down Statements; Misrepresentation of Authority

141.    On **October 27, 2025,** in New York Supreme Court before Judge Feroleto, the Court expressed that Mila should have holiday access with Plaintiff and that the case should step down toward reunification.

142.    DSS counsel represented that TSV staff controlled step-down progression.

143.    After the appearance, TSV staff contradicted this, denying control or suggesting they lacked authority.

144.    The conflicting representations demonstrate arbitrary, opaque decision-making and misrepresentation to the Court.

145.    DSS/CPS used the opacity to prolong supervision without objective criteria.

**Q. November 2025 – Emotional Harm; Care Concerns; Holiday Obstruction**

146.   On **November 6, 2025**, during a TSV visit, Mila expressed a desire to go home with Plaintiff and expressed missing paternal family.

147.   On that date, Plaintiff observed signs consistent with neglectful care (including inappropriate clothing sizing) and child discomfort.

148.   TSV staff praised Plaintiff's parenting and de-escalation skills, undermining any narrative that Plaintiff presented a danger during visits.

149.   On or about **November 14, 2025**, Fisher sent communications stating there were "no steps" and only vague "discussions," contradicting prior statements about step-down control.

150.   On or about **November 20, 2025**, TSV/DSS communicated denial of holiday access despite the Court's expressed authorization on October 27.

151.   Denial of holiday access inflicted foreseeable emotional harm on the child and interfered with Plaintiff's familial association.

152.   Defendants' obstruction of holidays was not based on any new, objective safety finding against Plaintiff.

**R. Stay-Away Violation Observed by DSS-Affiliated Worker; Non-Enforcement and Concealment**

153.   A stay-away order existed intended to protect Mila from contact with Blendowski and/or his residence.

154.   During home visits conducted with CPS personnel, Francis observed that Mila and Urbanczyk were residing at, or regularly staying at, the home associated with Blendowski.

155.   Francis knew this arrangement conflicted with the protective purpose of the stay-away order.

156.   Francis did not initiate appropriate protective action, hotline reporting, or transparent disclosure to Plaintiff and the Court.

157.   DSS/CPS did not adjust its risk assessment to reflect the custodial household's violation and safety concerns.

158.   DSS/CPS selectively enforced restrictions against Plaintiff while tolerating violations in the custodial household.

159.   This selective enforcement increased danger to Mila and constitutes deliberate indifference.

**S. December 1–4, 2025 – State Filing and Explicit First Amendment Retaliation at TSV**

160.   On or about **December 1, 2025**, Plaintiff filed a supplemental affirmation in state court documenting contradictions, retaliation, and interference with visitation.

161.   On **December 4, 2025**, Plaintiff arrived at TSV for a scheduled visit; Mila was present and expecting contact with her father.

162. TSV staff introduced verbal restrictions prohibiting Plaintiff from discussing "the past," "emails," and "First Amendment rights."

163. Plaintiff requested to consult counsel before signing new paperwork reflecting these restrictions.

164. Sherene stated, in substance, that if Plaintiff intended to invoke or exercise "First Amendment rights," the visit would not occur.

165. TSV canceled the visit despite Mila's presence and expectation.

166. The cancellation was not based on child safety but on Plaintiff's attempt to exercise constitutional rights and consult counsel.

167. DSS/CPS ratified the retaliation by failing to correct it, failing to restore the visit, and continuing to rely on TSV as gatekeeper for Plaintiff's contact.

**T. December 11, 2025 - Ongoing Restrictions and Continued Harm**

168. On **December 11, 2025,** Plaintiff attended a supervised visit under continuing arbitrary restrictions and conditions.

169. Defendants continued to impose opaque controls without objective criteria for step-down.

170. The ongoing restrictions perpetuated psychological harm to Mila and emotional distress to Plaintiff.

**U. Notice, Pattern, and Policy-Level Ratification**

171. Supervisors (including Moss and Gorlewski) received repeated notice via emails, formal notices, filings, recordings, and communications.

172. County counsel and County leadership were placed on notice through litigation activity and documented disputes concerning control over step-down and visitation.

173. Despite notice, Defendants failed to correct known retaliatory practices, evidence suppression, and non-enforcement of safety concerns in the custodial household.

174. The County's failure to intervene constituted ratification and deliberate indifference.

**V. Continuing Violation**

175. Defendants' conduct constitutes a continuing course of retaliation, suppression, and interference with familial association extending through at least **December 11, 2025**.

176. Plaintiff's injuries are cumulative and ongoing as a result of the continuing course of conduct.

177. This action does not require this Court to review, modify, or interfere with any custody determination and seeks damages and equitable relief for completed constitutional violations.

178. Defendants had a duty to preserve body-camera footage, visitation recordings, emails, texts, and case records, and Plaintiff will seek sanctions for any spoliation.

179. False sexualized allegations by state actors altered Plaintiff's legal status and foreclosed employment opportunities.

## V. DSS AUTHORITY, DUTIES, AND CLEARLY ESTABLISHED LAW (NEW YORK)

180.  DSS/CPS caseworkers are not lawful advocates for the agency or adversaries to parents.

181.  Their lawful purpose is child safety while preserving family integrity whenever safely possible.

182.  Social Services Law § 384-b embodies New York's policy favoring preservation of family relationships except where legally necessary.

183.  Family Court Act provisions governing removal and reunification require individualized, evidence-based action and reasonable efforts.

184.  Investigations must be impartial and documented in complete, accurate case records.

185.  OCFS regulations require accurate recordkeeping and prohibit bias, speculation, and coercive or leading interview practices with children.

186.  These duties were known and clearly established to reasonable child welfare professionals.

187.  Defendants deviated from these duties by fabricating/maintaining false narratives against Plaintiff, suppressing exculpatory evidence, retaliating for protected activity, and tolerating custodial household violations.

## VI. OATH OF OFFICE, IMMUNITY LIMITS, AND QUALIFIED IMMUNITY BAR

188.  DSS/CPS employees are public employees bound by oath and duties to the U.S. and New York Constitutions.

189.  Defendants' acts alleged herein were investigative and administrative (evidence gathering, reporting, visitation control, case planning), not prosecutorial advocacy.

190.  Absolute immunity does not apply to the conduct alleged herein.

191.  At all relevant times, it was clearly established that state actors may not fabricate evidence, suppress exculpatory information, retaliate for protected speech, or interfere with familial association without lawful justification.

192.  No reasonable official could believe the conduct alleged herein was constitutional.

193.  Defendants are not entitled to qualified immunity.

194.  At all relevant times, it was clearly established law that state actors may not retaliate against protected speech; fabricate or suppress evidence affecting parental rights; selectively enforce child-protective authority based on animus; or knowingly increase danger to a child through deliberate indifference. No reasonable caseworker, supervisor, or contracted agent could believe that canceling visitation because a parent invoked the First Amendment, concealing stay-away violations, or maintaining contradictory findings known to be false was lawful. Accordingly, Defendants are not entitled to qualified immunity.

## VII. INCORPORATION OF STATE-COURT RECORD FOR FACTUAL CONTEXT ONLY

195.    Plaintiff expressly incorporates by reference all affidavits, affirmations, motions, exhibits, transcripts, recordings, and written submissions previously filed or served in related state-court proceedings solely to establish notice, intent, chronology, and Defendants' conduct under color of state law.

196.    Plaintiff does not seek appellate review, modification, reversal, or supervision of any state-court custody or visitation order in this action.

197.    Plaintiff seeks redress for independent federal constitutional violations and related state-law torts committed under color of law.

198.    Plaintiff expressly reserves all rights of the minor child, Mila Marra, to pursue independent claims arising from the same conduct alleged herein. Nothing in this Complaint shall be construed as a waiver, release, or adjudication of the child's independent constitutional or state-law rights.

199.    Plaintiff intends, if and when counsel is retained or a guardian ad litem is appointed pursuant to Federal Rule of Civil Procedure 17(c), to seek leave of Court to add Mila Marra as a plaintiff or to otherwise assert her claims in an appropriate procedural posture.

## VIII. EVIDENCE PRESERVATION AND ANTI-SPOILATION NOTICE

200.    Defendants are hereby placed on notice of their obligation to preserve all documents, recordings, electronically stored information, and tangible evidence relevant to this action, including but not limited to: CPS/DSS case files; drafts and versions of indicated reports; internal emails, text messages, and messaging-platform communications; body-worn camera footage; TSV visitation notes, audio, video, policies, and procedures; training materials; supervisory communications; and communications with Mother or third parties.

201.    This duty applies to all forms of data, whether stored electronically or in hard copy, and includes associated metadata. Any destruction, alteration, concealment, or failure to preserve such evidence may result in sanctions, adverse inferences, or other relief deemed appropriate by the Court.

202.    Plaintiff previously served written notices on Defendants on October 16–17, 2025, identifying constitutional violations and expressly demanding preservation of all records, communications, and electronically stored information related to this matter prior to the initiation of this action.

## IX. NOTICE OF CLAIM COMPLIANCE (STATE-LAW CLAIMS ONLY)

203.    Plaintiff timely served Notices of Claim pursuant to New York General Municipal Law § 50-e as to the municipal actors and employees for the state-law claims pleaded herein.

204.    The conditions precedent to bringing state-law tort claims under GML § 50-i have been satisfied and/or are otherwise met.

## X. CAUSES OF ACTION

(Each count incorporates by reference paragraphs 1-204 as if fully set forth herein.)

## COUNT I - FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

(Against County of Erie under Monell; DSS/CPS individual Defendants; TSV/Catholic Charities; Sherene; Jessica; and Does)

205. Plaintiff engaged in protected First Amendment activity, including peaceful protest, complaints to DSS/CPS, filing motions and affirmations, sending a formal notice of rights, and requesting to consult counsel.

206. Defendants took adverse actions, including escalation of proceedings shortly after protected protest, a 49-day visitation blackout, retaliatory conditions, threats to cancel visits if Plaintiff consulted counsel, and cancellation of the December 4, 2025 visit explicitly tied to Plaintiff's "First Amendment rights."

207. The adverse actions would deter a person of ordinary firmness from engaging in protected activity.

208. Plaintiff's protected activity was a substantial or motivating factor in Defendants' adverse actions, as evidenced by temporal proximity, express statements, and lack of legitimate safety justification.

209. Defendants acted under color of state law.

210. Defendants violated Plaintiff's First Amendment rights.

## COUNT II - SUBSTANTIVE DUE PROCESS / FAMILIAL ASSOCIATION (42 U.S.C. § 1983)

(Against County of Erie under Monell; DSS/CPS individual Defendants; TSV/Catholic Charities; Sherene; Jessica; and Does)

211. Plaintiff has a fundamental liberty interest in the care, custody, and companionship of his child.

212. Defendants interfered with this relationship in arbitrary, oppressive, and conscience-shocking ways, including suppression of exculpatory information, retaliation, opaque step-down control, denial of holidays contrary to judicial direction, and cancellations unrelated to safety.

213. Defendants' actions were not narrowly tailored to any compelling governmental interest and were not tied to objective findings of danger posed by Plaintiff.

214. Defendants violated Plaintiff's and Mila's substantive due process rights.

## COUNT III - PROCEDURAL DUE PROCESS: FABRICATION & SUPPRESSION (42 U.S.C. § 1983)

(Against County of Erie under Monell; DSS/CPS individual Defendants; and Does)

215. Plaintiff had protected liberty and reputational interests that could not be curtailed without constitutionally adequate process.

216. DSS/CPS fabricated and manipulated evidence by issuing contradictory indicated reports, weaponizing DSS-directed medical care as "doctor shopping," and maintaining a false narrative of risk despite admissions and police conclusions.

217. DSS/CPS suppressed exculpatory information including the CAC recantation and material information concerning risks in the custodial household and non-enforcement of the stay-away order's protective purpose.

218. Defendants' fabrications and suppressions foreseeably affected court proceedings, visitation restrictions, and Plaintiff's parental rights.

219. Defendants violated Plaintiff's procedural due process rights.

## COUNT IV - STATE-CREATED DANGER / DELIBERATE INDIFFERENCE (42 U.S.C. § 1983)

(Against County of Erie under Monell; DSS/CPS individual Defendants; Francis; and Does)

220. Defendants knew or should have known of specific dangers to Mila in the custodial household based on disclosures, medical concerns, and stay-away risk factors.

221. Defendants increased Mila's vulnerability and risk by failing to act on custodial household violations and safety concerns while diverting scrutiny and restrictions onto Plaintiff.

222. Defendants' deliberate non-enforcement and concealment created or exacerbated danger to Mila that would not have existed absent Defendants' conduct.

223. Defendants acted with deliberate indifference to Mila's safety and emotional well-being.

224. Defendants violated Mila's and Plaintiff's Fourteenth Amendment rights.

## COUNT V - EQUAL PROTECTION: SELECTIVE ENFORCEMENT (42 U.S.C. § 1983)

(Against County of Erie under Monell; DSS/CPS individual Defendants; and Does)

225. Defendants enforced protective scrutiny and restrictions against Plaintiff while minimizing or ignoring comparable or more serious concerns in the custodial household.

226. Plaintiff was treated differently from similarly situated parents without rational basis and with retaliatory animus.

227. Defendants violated the Equal Protection Clause.

## COUNT VI - § 1983 CONSPIRACY (42 U.S.C. § 1983)

(Against DSS/CPS individuals; TSV/Catholic Charities; Sherene; Jessica; Urbanczyk; Blendowski; and Does)

228. Defendants reached an agreement, tacit or explicit, to act in concert to deprive Plaintiff of his constitutional rights and to maintain a false narrative of risk.

229. Overt acts included coordinated narratives, retaliatory visitation rules and cancellations, collective suppression of exculpatory information, and concealment/non-enforcement of custodial household safety violations.

230. The conspiracy's purpose and effect were to punish Plaintiff for protected speech, prolong separation, and avoid accountability for failures to protect Mila.

231. As a direct and proximate result, Plaintiff's constitutional rights were violated and he suffered damages.

## COUNT VII - MONELL LIABILITY: POLICY, CUSTOM, FAILURE TO TRAIN/SUPERVISE (42 U.S.C. § 1983)

(Against County of Erie)

232. The constitutional violations alleged herein were caused by policies, customs, and practices of Erie County and its DSS/CPS operations.

233. Those customs include:
   a. treating coached allegations as credible without neutral verification;
   b. minimizing or suppressing exculpatory recantations and context;
   c. using DSS-directed medical compliance as a basis to accuse a parent of neglect;
   d. retaliating against parents who protest, complain, file motions, or assert rights;
   e. delegating effective gatekeeping authority over visitation to contractors without adequate safeguards; and
   f. failing to train and supervise staff on constitutional limits, documentation obligations, and non-retaliation.

234. Policymakers and supervisors had actual notice through complaints, emails, recordings, filings, and internal communications.

235. Despite notice, the County failed to correct or discipline, constituting deliberate indifference and ratification.

236. The County's customs and failures were the moving force behind Plaintiff's injuries.

## Incorporation of State-Court Record for Factual Context Only

237. Plaintiff does not seek review, modification, reversal, enforcement, or supervision of any Family Court or Supreme Court custody, visitation, or placement determination. This action challenges completed and ongoing **independent constitutional violations** committed by Defendants under color of state law, including retaliation, fabrication of evidence, suppression of exculpatory information, selective enforcement, and deliberate indifference. Adjudication of these claims does not require this Court to decide issues of custody, parental fitness, or domestic relations, and therefore is not barred by the domestic relations exception, Younger abstention, or the Rooker-Feldman doctrine.

## COUNT VIII - DEFAMATION PER SE (New York Common Law)

(Against Urbanczyk; and against DSS/CPS/TSV actors to the extent they repeated or endorsed defamatory statements outside privileged contexts)

238.    Defendants made false statements accusing Plaintiff of sexual misconduct or implying that Plaintiff was a sexual danger to his child.

239.    Such statements were false, harmful, and constituted defamation per se.

240.    Plaintiff suffered reputational harm, emotional distress, and economic damages.

## COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (New York Common Law)

(Against DSS/CPS individuals; TSV/Catholic Charities; Sherene; Jessica; Urbanczyk; Blendowski)

241.    Defendants engaged in extreme and outrageous conduct, including retaliatory deprivation of parent-child contact, stigmatizing sexual accusations without credible basis, and knowingly canceling and obstructing visitation in a manner foreseeably injuring the child.

242.    Defendants acted intentionally or with reckless disregard of the probability of causing severe emotional distress.

243.    Plaintiff suffered severe emotional distress, anxiety, humiliation, and psychological harm.

## COUNT X - NEGLIGENCE / NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (New York Common Law)

(Against County of Erie; DSS/CPS; Catholic Charities/TSV; and relevant individuals)

244.    Defendants owed duties arising from their custody-related roles, child protective responsibilities, and contracted supervision functions.

245.    Defendants breached their duties by failing to act on known safety risks, failing to enforce protective purposes of court orders, and mishandling visitation processes.

246.    The breaches foreseeably caused emotional distress and harm to Plaintiff and Mila.

## COUNT XI - ABUSE OF PROCESS / MALICIOUS PROSECUTION (Civil Context; New York Common Law)

(Against DSS/CPS individuals; and Urbanczyk to the extent applicable)

247.    Defendants used child protective processes and proceedings primarily to punish Plaintiff for speech, gain leverage, and maintain agency control rather than to protect the child based on credible evidence.

248.    Defendants acted with malice and without probable cause, as shown by contradictory reports and internal/police conclusions of non-credibility coupled with continued pursuit.

249.    Plaintiff suffered deprivation of parental liberty interests, reputational harm, emotional distress, and economic damages.

## XI. DAMAGES

250.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered constitutional injury, including deprivation of First and Fourteenth Amendment rights.

251.   The emotional and psychological injuries suffered by Plaintiff and his daughter were not speculative or transient, but concrete, cumulative, and ongoing. Plaintiff experienced anxiety, sleep disruption, loss of employment opportunities, reputational stigma, and chronic emotional distress arising from prolonged separation, false sexualized allegations, and retaliatory deprivation of parental contact. The minor child experienced attachment disruption, fear, distress surrounding visits and cancellations, and confusion caused by inconsistent narratives and prolonged separation from a protective parent. These injuries were foreseeable, documented, and known to Defendants.

252.   Plaintiff suffered severe emotional distress, mental anguish, anxiety, humiliation, fear, and psychological trauma from prolonged separation, retaliation, and stigmatization.

253.   Plaintiff suffered reputational harm to his good name and standing in the community due to false sexualized accusations and official disparagement.

254.   Plaintiff suffered economic harm, including loss of employment opportunities, lost income, lost professional advancement, and diminished earning capacity caused by stigma and prolonged proceedings.

255.   Plaintiff suffered loss of companionship, parenting time, and the ordinary incidents of parenthood.

256.   Mila suffered emotional and psychological harm, including distress and trauma caused by prolonged separation, cancellations, and continued exposure to custodial household risks known to Defendants.

257.   Mila's harm was foreseeable and known to Defendants, who nevertheless acted with deliberate indifference.

258.   Defendants' conduct was willful, reckless, and in callous disregard of constitutional rights, justifying punitive damages against individual Defendants.

259.   Defendants are jointly and severally liable to the fullest extent permitted by law for compensatory damages caused by their conduct.

260.   Plaintiff seeks compensatory damages not less than **$200,000,000**, punitive damages against individual Defendants, declaratory and injunctive relief, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award:

261.   Compensatory damages in an amount to be determined at trial but not less than $200,000,000.

262.   Punitive damages against individual Defendants where permitted by law.

263.   Declaratory relief that Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments.

264.   Injunctive relief prohibiting further retaliation and requiring constitutionally adequate procedures for visitation conditions and cancellations, including prohibiting cancellation or coercive conditions based on protected speech or attempts to consult counsel.

265.   Structural relief requiring the County to implement and document training, supervision, and policy reforms to prevent recurrence of the constitutional violations alleged herein.

266.   Costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and allowable costs.

267.   Pre- and post-judgment interest as permitted by law.

268.   Such other and further relief as the Court deems just and proper.

## XIII. JURY DEMAND

269.   Plaintiff demands a trial by jury on all issues so triable.

Dated: December 2025 19
Erie County, New York

Respectfully submitted,

*[signature]*

**Anthony Marra**
Plaintiff, Pro Se
**Address Confidential and on file with the Court**

25 CV 1414

JS 44  (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Anthony Marra

**DEFENDANTS**
County of Erie

**(b)** County of Residence of First Listed Plaintiff    Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Erie
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se, Address Confidential and on file with the court. 562-666-7272

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | Leave Act | ☐ 864 SSID Title XVI | Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983 - First and Fourteenth Amendment Civil Rights Violations
Brief description of cause:
Retaliation for protected speech; Fabrication/suppression of evidence; Familial Interference; State Created Danger

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*      JUDGE                                DOCKET NUMBER

DATE
12/17/2025

SIGNATURE OF ATTORNEY OF RECORD
*Anthony Marra*

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____